http://www.va.gov/vetapp16/Files3/1621729.txt

Citation Nr: 1621729 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 06-36 489 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, Iowa

THE ISSUES

1. Entitlement to service connection for a sleep disorder, claimed as sleep apnea.

2. Entitlement to service connection for a gastrointestinal disability, claimed as gastroesophageal reflux disease (GERD) and a dyspepsia disability.

REPRESENTATION

The Veteran represented by: The American Legion

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

Russell Veldenz, Counsel

INTRODUCTION

The Veteran served on active duty from August 1997 to December 1997 and from March 1999 to July 2000. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2011 rating decision by the Chicago, Illinois Department of Veterans Affairs (VA) Regional Office (RO). The Des Moines, Iowa RO has jurisdiction of the claims file. 

Previously, along with the issues listed above, before the Board there also was the issue of service connection for pes cavus. Because the Veteran had two separate hearings before two different Veteran's Law Judges in January 2008 and April 2014, that decision was decided by a three judge panel in a separately issued Board decision in July 2015. The remaining issues listed above will be decided by the undersigned Veteran's Law Judge. A transcript of the April 2014 hearing is in the record.

The Board notes that the Veteran, as a lay person, filed his claims as service connection for sleep apnea and for Acid reflux. Multiple medical diagnoses that differ from the claimed condition do not necessarily represent a separate claim, and what constitutes a claim cannot be limited by a lay Veteran's assertion of his condition in his application, but must be construed based on the reasonable expectations of the non-expert claimant and the evidence developed in processing the claim. Clemons v. Shinseki, 23 Vet. App. 1, 4-5 (2009). Because the evidence indicates that the Veteran may have different conditions or diagnoses for his sleep impairment and for his gastrointestinal symptoms, including as caused by other service connected disabilities, and as a different legal theory may apply, the Board has therefore stated the issues as set forth on the first page of this decision. 
In a rating decision in November 2015, the RO denied the claim for total disability based upon individual unemployability. As the Veteran has not initiated an appeal of the claim, the claim has not been developed for appellate review by the Board. The Veteran does have the remainder of the one-year period from notification of the November 2015 rating decision to file a notice of disagreement to initiate an appeal of the claim.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue of service connection for a gastrointestinal disability is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ). 

FINDINGS OF FACT

A respiratory disorder, obstructive sleep apnea, was not present in service, and obstructive sleep apnea, first diagnosed after service, is unrelated to an injury, disease, or event in service, or caused or chronically aggravated by the Veteran's service-connected disabilities, including as due to medications. 

CONCLUSION OF LAW

The criteria for service connection for obstructive sleep apnea are not met. 38 U.S.C.A. §§ 1110, 1154, 5103, 5103A, 5107 (West 2002); 38 U.S.C.A. §§ 3.102, 3.159, 3.303, 3.304 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate the claims. 

Duty to Notify

Under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), when VA receives a complete or substantially complete application for benefits, it will notify the claimant of the following: (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide. 

Also, the VCAA notice requirements apply to all five elements of a service connection claim. The five elements are: 1) veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473, 484-86 (2006). The VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004). The RO provided pre- adjudication VCAA notice by letter, dated in August 2010. 

Duty to Assist

Under 38 U.S.C.A. § 5103A, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim. The RO has obtained service treatment records, VA records, records from the Social Security Administration, and medical literature, and afforded the Veteran VA examinations in August 2015, and a hearing before the undersigned in April 2014. 

The report of the VA examinations included a review of the Veteran's medical history, including his service treatment records, an interview and an examination of the Veteran, as well as opinions with rationale discussing the relationship of the claimed disabilities and the Veteran's service connected disabilities. Therefore, the Board concludes that the VA examination is adequate. 38 C.F.R. § 4.2; see Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (holding that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate).

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that the Veterans Law Judge who conducts a hearing fulfill two duties to comply with the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the Board hearing, the Veteran was assisted at the hearing by his service representative. The undersigned Veterans Law Judge (VLJ) identified the issues and asked the Veteran to provide details of the medications he believed caused the disabilities at issue were prescribed for his service connected disabilities. He also asked the Veteran when the medications were first prescribed. The VLJ also asked the Veteran to clarify that he was not claiming the disabilities at issue are directly related to service but as a consequence of medications for his service connected disabilities. 

The hearing focused on the elements necessary to substantiate the claims, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claim for service connection for obstructive sleep apnea. Therefore, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2), or to the extent the VLJ did not expressly state the elements of the criteria that were lacking to substantiate the claims, such error is harmless as both the Veteran and his service representative also demonstrated actual knowledge of what was needed to prove the claim.

As the Veteran has not identified any additional evidence pertinent to the claim and as there are no additional records to obtain, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claims is required to comply with the duty to assist. 

Principles of Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. § 1110, 38 C.F.R. § 3.303.

Service connection means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service, or if preexisting such service, was aggravated by service. This may be accomplished by showing inception or aggravation during service. 38 C.F.R. § 3.303(a).

Service connection may be established by either continuity of symptomatology after service under 38 C.F.R. § 3.303(b) or by initial diagnosis of the medical condition after service under 38 C.F.R. § 3.303(d). The Federal Circuit has held that continuity of symptomatology under 3.303(b) applies only to chronic diseases listed in 3.309. Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013). Sleep apnea is not listed as a disease under § 3.309 as a chronic disease. 

Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In order to establish service connection for the claimed disorder, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed.Cir. 2004); Hickson v. West, 12 Vet. App. 247, 253 (1999). 
In addition, a disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. 38 C.F.R. § 3.310(a). Secondary service connection includes the concept of aggravation of a nonservice-connected disability by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995)(en banc). 

In order to establish secondary service connection for the claimed disorder, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. Hickson v. West, 12 Vet. App. 247, 253 (1999). 

Competency is a legal concept in determining whether lay or medical evidence may be considered, in other words, whether the evidence is admissible as distinguished from credibility and weight, factual determinations going to the probative value of the evidence, that is, does the evidence tend to prove a fact, once the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997).

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159.

Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer a medical diagnosis, statement, or opinion. 38 C.F.R. § 3.159.

Competency is a question of fact, which is to be addressed by the Board. Jandreau, v. Nicholson, 492 F.3d 1372, 1377 (2007).

When the evidence is admissible, the Board must then determine whether the evidence is credible. "Credible evidence" is that which is plausible or capable of being believed. See Caluza v. Brown, 7 Vet. App. 478, 511 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (the determination of credibility is a finding of fact to be made by the Board in the first instance). 

If the evidence is credible, the Board, as fact finder, must determine the probative value or weight of the admissible evidence, that is, does the evidence tend to prove a material fact. Washington v. Nicholson, 19 Vet. App. 362, 369 (2005). If the evidence is not credible, the evidence has no probative value. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the Veteran. 38 U.S.C.A. § 5107(b). 

Effect of Lay Evidence

The Board recognizes that the Veteran's evidence includes his opinions that his sleep apnea is caused or aggravated by his medications prescribed for his service connected disabilities. As noted, as a lay person, the Veteran is competent to describe symptoms, which he is able to perceive through the use of his senses. 38 C.F.R. § 3.159 (Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience; lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person.); see Layno v. Brown, 6 Vet. App. 465, 469-71 (1994) (lay testimony is competent as to symptoms of an injury or illness, which are within the realm of one's personal knowledge, personal knowledge is that which comes to the witness through the use of the senses). Further, the Veteran's statements and testimony are admissible and are to be considered as evidence of continuity. Rucker v. Brown, 10 Vet. App. 67, 74 (1997) (Competency is a legal concept in determining whether lay evidence may be considered, in other words, whether the evidence is admissible). The Board thus finds that the Veteran is competent to describe his symptoms in service and thereafter.

Although the Veteran is competent to describe symptoms of sleep apnea, unless the diagnosis is capable of lay observation, the determination as to the presence or diagnosis of such a disability is medical in nature and competent medical evidence is required to substantiate the claim. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007) (Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation). The Veteran is not asserting any condition that is capable of lay observation. See Jandreau, 492 F.3d at 1377 (explaining in a footnote, sometimes a layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer); see also Barr, 21 Vet. App at 309 (varicose veins were subject to non-expert diagnosis due to the readily observable defining characteristics of the condition).

Furthermore, for the claims before the Board, a diagnosis cannot be made by the Veteran as a lay person based on mere personal observation, that is, perceived by visual observation or by any other of the senses. As demonstrated by this case, a diagnosis depends upon interpretation of symptoms, and clinical and diagnostic tests, such as X-rays and other radiological studies, diagnostic testing such as sleep studies, and laboratory tests, which requires medical knowledge. No factual foundation has been established that the Veteran is otherwise qualified through specialized education, training, or experience to offer a medical diagnosis. Therefore, the Veteran's assertion or opinion that he has a given diagnosis of sleep apnea and the relationship of a diagnosis or symptom to service or the result of medication is not competent evidence. To this extent his statements and testimony are not admissible as evidence of the diagnosis of a disability. It is the opinion of a layman and not competent medical evidence of a diagnosis by a medical professional. The Veteran's discussion of his symptoms over the years certainly is important, however, the Veteran's opinion as to the cause of his symptoms cannot outweigh the opinion of a medical professional.

To sum up the foregoing, the Board will consider the Veteran's testimony as it relates to the onset and continued presence of his symptoms. Such lay evidence is relevant and competent. To the extent that the Veteran is offering his own opinion as to what disability is causing the symptoms, or the relationship of the disability to service, the Board has disregarded the Veteran's opinions in its analysis.

Medical Literature

The Veteran has submitted medical literature in the form of internet articles that he asserts demonstrate his medications for his back, specifically opioids, resulted in his obstructive sleep apnea. 

The Board acknowledges that medical article and treatise evidence may be relevant in certain circumstances, such as when they are combined with an opinion of a medical professional. Sacks v. West, 11 Vet. App. 314, 314 (1998). However, generic statements concerning only medical possibilities are too general and inconclusive to provide the requisite degree of medical certainty. Beausoleil v. Brown, 8 Vet. App. 459, 463 (1996). The Veteran's evidence is general in nature and no medical professional has specifically related the information contained therein to the Veteran. See Sacks v. West, 11 Vet. App. 314, 317 (1998) ("This is not to say that medical article and treatise evidence are irrelevant or unimportant; they can provide important support when combined with an opinion of a medical professional"); Beausoleil v. Brown, 8 Vet. App. 459, 463 (1996). 

Furthermore, after review of the literature, the Board finds that the literature has no probative value regarding the Veteran's claim. For instance, the Veteran has submitted articles linking central sleep apnea to opioid use. As discussed below, the Veteran has not been diagnosed with central sleep apnea; he has been diagnosed with obstructive sleep apnea. As one of the articles points out, central sleep apnea and obstructive sleep apnea are distinctly different diagnoses. The other articles mention symptoms that may be attributed to obstructive sleep apnea, but do not specifically mention either disorder. The Veteran has other disabilities which may be causing the symptoms such as sleep impairment due to back pain. 

Thus, the Board finds that the medical literature is of little probative value in this case. It is possible the Veteran is asserting that he should be accorded the benefit-of-the-doubt in this case as the medical evidence presents a reasonable doubt regarding the cause of the Veteran's disabilities. The reasonable doubt doctrine, however, requires that there be a "substantial" doubt and "one within the range of probability as distinguished from pure speculation or remote possibility." 38 C.F.R. § 3.102. Those circumstances are not present in this case. 

Service Connection for Obstructive Sleep Apnea

Facts

Service treatment records do not show a diagnosis of obstructive sleep apnea or treatment for any sleep disturbances. 

The Board notes that most of the Veteran's post service treatment relates to pain management for his back disability, which is service connected. Treatment has included prescriptions of opioids, such as (but not limited to) Hydrocodone, Morphine, and Oxycodone. 

In a general VA examination in 2001, the Veteran denied any history of a respiratory problem such as dyspnea upon exertion or rest. 

In August 2007, the Veteran complained he was excessively sleepy. He has not been told by his wife that he quits breathing while sleeping, but he knows he is having some sort of difficulty. As result, he had daytime sleepiness that affected his productivity. 

In November 2007, a neurologist reviewed a recent MRI and note the Veteran had, a septal deformity, rhinitis, and maxillary sinus mucous retention cysts. In addition, the MRI demonstrated mucosal thickening of the sinuses. 

In January 2008, the Veteran underwent a sleep study, which resulted in the Veteran having hypopnea events both central and obstructive in cause. The respiratory therapist, however, deferred a diagnosis to a physician. After reviewing the test results, the neurologist made a diagnosis of obstructive sleep apnea, improved with a CPAP machine.

The Veteran signed an opioid use agreement with his VA providers in April 2009, which mentions that opioids can cause drowsiness. 

In January 2010, a pulmonology consult noted the Veteran had poor compliance with his CPAP because of nasal congestions and post nasal drip. He complained of dyspnea upon exertion and problems breathing every day. She noted that pulmonary function tests revealed the Veteran had a mild diffusion defect and a suggestion of small airway disease. The Veteran also had chronic rhinitis and a deformity of the nasal bones.

In his March 2010 claim for service connection for sleep apnea, the Veteran reported he used two different types of inhalers and different nasal sprays.

In December 2010, the Veteran complained of heartburn over the past year. It wakes him up at night. 

In January 2015, the Veteran signed an informed consent for long term opioid use that listed sleepiness as a side effect and sleep apnea under lesser known or other risks for opioids. The consent did not state what type of sleep apnea was a risk with opioid use. 

The Veteran was afforded a VA examination in August 2015. The Veteran reported the onset of sleep apnea condition in approximately 2005 associated with daytime drowsiness at work as a complex custodian. The Veteran's sleep apnea was finally diagnosed from a January 2008 sleep study. He has used a C-PAP machine since 2008, but stated he is not always compliant as the full mask set-up can be uncomfortable. He denies specific work restriction because of his sleep apnea condition. The Veteran did not have any findings, signs or symptoms attributable to sleep apnea. The VA examiner's only finding is that the Veteran has truncal obesity. 

The VA examiner's diagnosis was obstructive sleep apnea. The VA examiner noted that obstructive sleep apnea condition was not diagnosed in service based upon his review of the treatment records. Instead, the Veteran has a diagnosis of obstructive sleep apnea since 2008. The examiner concluded first, the sleep apnea condition is less likely than not caused by illness, injury, or event during military service. Secondly, the Veteran's obstructive sleep apnea condition is less likely than not caused by or aggravated beyond its natural course from his service connected chronic back condition including medication for that condition. The examiner noted the Veteran has several risk factors for obstructive sleep apnea: male sex, truncal obesity, and aging. Other common factors relate to abnormal and redundant tissue of the upper airway but the VA examiner did not comment on the presence of these factors in the Veteran. As to his back and medication, back pain and the Veteran's use of pain medication may cause disordered sleep, but not obstructive sleep apnea.

The Veteran testified in April 2014 that the medication for his service connected disabilities have made him drowsy. He also testified other issues caused his sleep disturbance such as his back pain. The Veteran stated he was not claiming any sleep apnea disability was related to service, but rather due to the medicines prescribed for his service connected disabilities.

Analysis

When determining eligibility for compensation, all theories of entitlement must be considered. See, e.g., Szemraj v. Principi, 357 F. 3d 1370, 1373 (Fed. Cir. 2004).

The service treatment records do not show obstructive sleep apnea or any sleep symptoms. Therefore, on the basis of the service treatment records and the other evidence, in the absence of any clinical finding or diagnosis, a respiratory disorder is not shown to have had onset during service. 38 C.F.R. § 3.303(a).

That finding that it did not affirmatively have its onset in service, however, does not preclude a finding of service connection for a respiratory disability if all of the evidence, including that pertinent to service establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As noted above, the VA examiner in 2015 noted not only the absence of sleep apnea in service, but no diagnosis until January 2008. By this, the Board interprets the VA examiner's opinion that the initial demonstration of obstructive sleep apnea so long after service means obstructive sleep apnea is less likely than not related to service, Further, before the Veteran's diagnosis of obstructive sleep apnea in 2008, any complaints of sleep disturbance were attributed to other causes, including medication. The notes indicate the cause was not obstructive sleep apnea, but rather a general side effect of drowsiness, or as the VA examiner described it, disordered sleep. 

Further, in the absence of demonstration of ongoing symptomatology, or a competent nexus opinion, the initial demonstration of current disability years after service is too remote from service to be reasonably related to service. See Maxson v. West, 12 Vet. App. 453, 459 (1999), aff'd sub nom Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000) (it was proper to consider the Veteran's entire medical history, including a lengthy period of absence of complaints.); see also Shaw v. Principi, 3 Vet. App. 365 (1992) (a Veteran's delay in asserting a claim can constitute negative evidence, which weighs against the claim). Here, the lapse of time from separation from the second period of active service in July 2000, to the diagnosis of obstructive sleep apnea in 2008 weighs against any assertion by the Veteran that his obstructive sleep apnea had its onset in service. 

The Board recognizes that contemporaneous documentation of an injury is not required, Buchanan v. Nicholson, 451 F. 3d 1331, 1335 (Fed. Cir. 2006), but rather, the Board has weighed the negative evidence of the in service treating medical records and subsequent treating records against any claim by the Veteran that an injury, disease, or event in service has caused him obstructive sleep apnea problems or symptoms since separation to the present. Harvey v. Brown, 6 Vet. App. 390, 394 (1994) (Board decision properly assigned more probative value to a private hospital record that included lay history that was made for treatment purposes than to subsequent statements made for compensation purposes); Kahana v. Shinseki, 24 Vet. App. 428, 440 (2011) (Lance, J., concurring) (the silence in a medical record can be weighed against lay testimony if the alleged injury, disease, or related symptoms would ordinarily have been recorded in the medical record being evaluated by the fact finder). The Veteran's post-service medical records are negative for complaints, symptoms, treatment, findings, or diagnoses for approximately 8 years following separation.

Further, the VA examiner pointed to other factors as the cause of the Veteran's obstructive sleep apnea such as the Veteran's gender, weight, and age. The Board finds no other medical evidence or opinion connecting the Veteran's obstructive sleep apnea directly to service. Finally, the Veteran himself agreed that his disability is not the direct result of service, but his medication for his service connected disabilities. Accordingly, for all of the foregoing reasons, the Board finds that the Veteran's obstructive sleep apnea was not incurred in service. 38 C.F.R. § 3.303(d). 

That leaves the question of whether the Veteran's medication for his service disabilities caused or aggravated his obstructive sleep apnea. 38 C.F.R. § 3.310(a). 

As noted earlier, the Veteran is not competent to offer an opinion that his obstructive sleep apnea caused or aggravated by his service disabilities, especially the opioid medication used to help manage his pain. Accordingly, the Board looks to see whether the medical evidence, including that pertinent to service, establishes that the disability is caused or aggravated by his medication, particularly opioids. 
The Board finds the unfavorable medical opinion of the August 2015 VA examiner is well reasoned, detailed, provides a rationale that is consistent with other evidence of record, and included reviews of the claims file and the Veteran's symptoms. The examiner acknowledged the Veteran has obstructive sleep apnea and sleep disturbance in general. The examiner noted the Veteran has several risk factors for obstructive sleep apnea: male sex, truncal obesity, and aging. Other common factors relate to abnormal and redundant tissue of the upper airway. While the VA examiner did not expressly comment on the presence of these factors in the Veteran, the Board notes the Veteran has been diagnosed with a deviated septum and mucosal cysts. As to his back and medication, back pain and the Veteran's use of pain medication may cause disordered sleep, but not obstructive sleep apnea. 

The examiner set forth an accurate historical history with medical details taken from the Veteran's claims file, which renders it especially probative. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (factors for assessing the probative value of a medical opinion are the physician's access to the claims file and the thoroughness and detail of the opinion). Being based on a complete review of the record, these opinions also take into account the Veteran's own assertions, but the examiner has determined the Veteran's assertions do not establish a relationship to service. The Board therefore finds that the opinion of the August 2015 VA examiner as persuasive evidence against the claim for service connection for sleep apnea due to the medication, particularly opioids, used to manage the Veteran's pain.

These opinions are the only independent medical opinions to address the etiology of the obstructive sleep apnea disability and there are no contrary opinions attributing his obstructive sleep apnea to service. There is no medical evidence that associates the obstructive sleep apnea disability to an injury, disease, or event of service origin. In addition, there is no medical evidence from his medical providers to associate the obstructive sleep apnea to his medication. At best, there is some evidence to suggest the medication causes drowsiness or sleep disturbance, but that is a symptom. The Board notes that a symptom, without a diagnosed or identifiable underlying malady or condition, does not, in and of itself, constitute a 'disability' for which service connection may be granted. See Sanchez-Benitez v. West, 13 Vet. App. 282 (1999). 

As noted above, the Veteran's medical literature does not support service connection for obstructive sleep apnea. At best, it supports opioids causing a type of central sleep apnea called drug induced central sleep apnea. The literature does not state opioids can cause obstructive sleep apnea. The Veteran has been diagnosed only with obstructive sleep apnea. The Veteran is basically asking the Board to apply medical knowledge to his disability and conclude it resulted from the medication used to treat his service connected disabilities. Neither the Veteran nor the Board is competent to supplement the record with unsubstantiated medical conclusions. Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991). The Board is not permitted to rely on its unsubstantiated opinion on a question of medical causation, but must provide a medical basis other than its own unsubstantiated conclusions to support its ultimate decision. See Kahana v. Shinseki, 24 Vet. App. 428, 434 (2011).

The Board therefore finds that the opinions of the VA examiner as persuasive evidence against the claim for service connection for the Veteran's diagnosed disability, obstructive sleep apnea. As the VA examiner applied medical analysis to the significant facts of the case to reach the conclusion expressed in the opinions, the Board also finds the evidence competent, credible and highly probative on the material issues of fact, pertaining to the diagnosis and cause of a current respiratory disorder or the relationship to service, which opposes, rather than supports, the claim.

Accordingly, the weight of the medical evidence is against an association or link between the claimed respiratory disorder, obstructive sleep apnea and service. The preponderance of the evidence is against the claim of service connection on the applicable theories of service connection, and the benefit of-the-doubt standard of proof does not apply. 38 U.S.C.A. § 5107(b).

ORDER

Entitlement to service connection for obstructive sleep apnea is denied

REMAND

The Board notes that the Veteran, as a lay person, filed his claims as service connection for acid reflux disease. Multiple medical diagnoses that differ from the claimed condition do not necessarily represent a separate claim, and what constitutes a claim cannot be limited by a lay Veteran's assertion of his condition in his application, but must be construed based on the reasonable expectations of the non-expert claimant and the evidence developed in processing the claim. Clemons v. Shinseki, 23 Vet. App. 1, 4-5 (2009). 

In this instance, the first indication of symptoms following service occurred in August 2002, when the Veteran complained his abdomen was hard and he had gas pains. He sought treatment for epigastric distress in June 2003, receiving a prescription for Ranitidine. The VAMC records thereafter have listed a diagnosis of dyspepsia as noted in a March 2008 mental health provider note. Dyspepsia is still listed as an active problem as of January 2015, although there also was a diagnosis of GERD in December 2010. 

The Veteran was provided a VA examination in August 2015 and the examiner provided opinions as to the relationship of GERD to service and the Veteran's service connected disabilities. Although the diagnosis of dyspepsia was noted, there was no discussion as to whether the dyspepsia diagnosis is related to service or the result of service connected disabilities or their medication. Dyspepsia is impairment of the power or function of digestion; usually applied to epigastric discomfort following meals. Dorland's Illustrated Medical Dictionary 586 (31st ed. 2007). It appears the Veteran had or still has a dyspepsia disability during the pendency of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 293 (2013). The record is insufficient for the Board to make a determination as it would require medical knowledge to distinguish or determine dyspepsia from GERD. The Board is not permitted to rely on its unsubstantiated opinion on a question of medical causation, but must provide a medical basis other than its own unsubstantiated conclusions to support its ultimate decision. See Kahana v. Shinseki, 24 Vet. App. 428, 434 (2011). Therefore, an addendum opinion is needed to determine if the Veteran also has a dyspepsia disability related to service or the other service related disabilities. Clemons, supra

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Arrange for the examiner who conducted the August 2015 examination, if available, prepare an addendum opinion, and if necessary, conduct a new examination. The claims file should be made available to the examiner in conjunction with the examination. The rationale for all opinions should be provided. 

The examiner is asked to determine whether the Veteran has a dyspepsia disability. If such disability is diagnosed, the examiner is requested to offer an opinion as to whether it is at least as likely as not (50 percent probability or more) that the disability began in service or is causally related to service.

The examiner is also asked to determine whether it is at least as likely as not (50 percent probability or more) any dyspepsia disability was caused by or aggravated by the Veteran's service connected disabilities to include as a side effect of medication taken for a service-connected disability. The examiner is further advised that aggravation for legal purposes is defined as a worsening of the underlying disability beyond its natural progression versus a temporary flare-up of symptoms. 

A complete rationale for any opinion offered should be provided

2. After the development requested is completed, readjudicate the claim for service connection for a gastrointestinal disability. If any benefit sought remains denied, furnish the Veteran and his representative a supplemental statement of the case and a reasonable period to respond, and then return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
ROBERT C. SCHARNBERGER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs